## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CARL LEE BLACKMON,**
     **Petitioner,**

**vs.**                  **CASE NO.: 3:08cv510/RV/MD**

**ROYCE A. PIPPIN,**
     **Respondent.**

_____

## <u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed a response, submitting relevant portions of the state court record (doc. 18), to which petitioner has replied (doc. 28).   The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing § 2254 Cases, Rule 8(a), 28 U.S.C. foll. § 2254.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

# BACKGROUND AND PROCEDURAL HISTORY[1]

By a three-count information filed on June 4, 2004, petitioner was charged with sexual battery (victim physically helpless to resist), burglary of a dwelling with assault or battery, and battery, in case number 1704 CF 002181 in the Circuit Court in Escambia County, Florida. (Doc. 18-1, ex. C, p. 1).[2] On December 2, 2004, a jury convicted petitioner of sexual battery, in violation of Fla. Stat. § 794.011(5); burglary with a battery or an assault, in violation of Fla. Stat. § 810.02(1)(b)(2)(a); and battery, in violation of Fla. Stat. § 784.03. (Ex. C, pp. 11-12, 109). The court sentenced petitioner to consecutive terms of imprisonment of fifteen years for count one, natural life for count two, and one year for count three. (Ex. C, pp. 112-116). Petitioner appealed, raising one claim of trial court error. (Ex. E).[3] The Florida First District Court of Appeal ("First DCA") affirmed petitioner's convictions and sentences without written opinion on October 28, 2005. *Blackmon v. State*, 913 So.2d 600 (Fla. Dist. Ct. App. 2005) (Table) (copy at ex. G).

On August 8, 2006, petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850, in which he claimed he received ineffective

---

[1] The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt. *Id.* at 319. The proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, the federal court believes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984). Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

[2] Hereafter, all references to exhibits will be to document 18 unless otherwise stated.

[3] Petitioner claimed that the trial court committed reversible error by convicting him of and imposing sentences for sexual battery and battery, a lesser included offense. (Ex. E). He argued the acts forming the basis of the convictions were one, continuous, criminal episode, so conviction and consecutive sentencing on both offenses constituted double jeopardy, in violation of petitioner's Fifth and Fourteenth Amendment rights. (*Id.*).

assistance of counsel due to trial counsel's failure to: (1) establish a defense for lack of probable cause to arrest or prosecute; (2) file a motion to dismiss for prosecution's failure to timely file formal charges; (3) request a *Richardson* hearing[4] or file a motion to suppress evidence obtained as a result of his arrest; (4) raise a *Brady* violation[5] for the state's withholding favorable evidence. (Ex. K, pp. 25-71). The trial court issued a written opinion denying relief, appending relevant portions of the trial record. (Ex. K, pp. 72-118). Petitioner then filed a motion for rehearing and notice to plaintiff of request for evidentiary hearing, adding six additional claims as "other issues this court needs to address[.]" (Ex. J, p. 10). The trial court denied the motion on April 13, 2007, because petitioner did not allege new facts, law, or issues meriting further consideration. (Ex. J., p. 13). It declined to address the additional claims because they could not be raised in a motion for rehearing. (*Id.*; *see* Fla. R. App. P. 9.330(a)). Petitioner appealed the denial on April 17, 2007. (Ex. J., p. 18).

On April 25, 2007, petitioner filed a second motion for post-conviction relief raising six grounds, all based on ineffective assistance of trial counsel.[6] (Ex. O, p. 1). The court first dismissed the motion for lack of jurisdiction because the first appeal was pending before the First DCA, but after reviewing petitioner's subsequent motion for rehearing, the court held in abeyance petitioner's second motion for post-conviction relief until the First DCA concluded proceedings on the first motion. (Ex. O, pp. 18, 23, 26).

On October 29, 2007, the First DCA affirmed the court's denial of petitioner's first motion for post-conviction relief without written opinion. *Blackmon v. State*, 968 So.2d 559 (Fla. Dist. Ct. App. 2007) (Table) (copy at ex. L). The trial court then

---

[4] *Richardson v. State*, 246 So.2d 71 (Fla. 1971).

[5] *Brady v. Maryland*, 373 U.S. 83, 83 S Ct. 1194, 10 L. Ed. 2d 215 (1963).

[6] While petitioner titled the motion "Motion to Vacate, Set Aside, or Correct Sentence Notice to Plaintiff of Request for Evidentiary Hearing," it was also a Rule 3.850 motion. (Ex. O, p. 1).

dismissed with prejudice petitioner's second motion, stating that because "Defendant could have, and should have, alleged the instant claims in his original motion for postconviction relief," the second motion was impermissibly successive. (Ex. O, p. 28). Petitioner's motion for rehearing was denied on January 9, 2008 (Ex. O. p. 75), and the First DCA affirmed the trial court's order without opinion on August 29, 2008. *Blackmon v. State*, 989 So.2d 639 (Fla. Dist. Ct. App. 2008) (Table) (copy at ex. P).

Petitioner initiated this federal habeas proceeding on November 10, 2008. (Doc. 1).

## LEGAL PRINCIPLES GOVERNING PETITION

### Exhaustion and Procedural Default

A petitioner defaults on an issue unless the petitioner first exhausted available state court remedies, giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971) (internal quotation omitted)); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (State is not estopped from relying on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same). This affords the state court the first opportunity to adjudicate the claim on the merits in a formal proceeding to resolve any constitutional issues. 28 U.S.C. § 2254(b); *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. *Picard*, 404 U.S. at 278, 92 S. Ct. at 513. The Supreme Court has held that "the substance of a federal habeas corpus claim must first be presented to the state courts," thus rejecting the contention that the petitioner satisfies the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief. *Id.* Appeals to a broad, general constitutional guarantee also fail present the "substance" of such a claim to the state court. *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982)(petitioner cited federal authority only by referring to a state court decision in which "the defendant. . .asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)). The federal claim must be explicitly stated from the outset, and if state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue. *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888 (relying on similar state law standard for evidentiary ruling does not constitute exhaustion); *Picard*, 404 U.S. at 277-78, 92 S. Ct. at 513 (petitioner failed "fair presentation" requirement when he raised equal protection argument for the first time to the Supreme Court); *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

More recently, the Supreme Court held that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material. . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347,

1351, 158 L. Ed. 2d 64 (2004). However, the Court stated in dicta that simply labeling the claim "federal" is sufficient. *Id.*

The Eleventh Circuit takes a more restrictive approach by requiring specific reference to the United States Constitution and favoring citations to federal cases. *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law). . .did not present to the Florida courts the federal claim asserted to us."). This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state Constitution. *Id.* at n.5; *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (holding that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record'") (citations omitted)).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S.Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim.). In the first instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *Coleman*, 501 U.S. at 735 n.1, 111 S. Ct. 2557 n.1; *Judd*, 250 F.3d at 1313. Unless the state court "clearly and expressly" relies on independent and adequate state grounds, the federal court may address the petition.[7] *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557. However, when any future

---

[7] The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds. *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) ("Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred").

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991); *Judd*, 250 F.3d at 1313.   A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement.  *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (citing Lee v. Kemna, 534 U.S. 362, 385-88, 122 S. Ct. 877, 890-92, 151 L. Ed. 2d 820 (2002)).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corrs.*, 377 F.3d 1317, 1345 (11th Cir. 2004).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991).  To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.* In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case. *Id.*

## Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[8]  Section 2254(d)(2) must be divided into two separate inquiries:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).   The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11ᵗʰ Cir. 2011); *see Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling.  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corrs.*, 608 F.3d 1313, 1315 (11ᵗʰ Cir. 2010).  Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes.

---

[8]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Thaler*, 130 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1). The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it. *Williams*, 529 U.S. at 409, 120 S. Ct. 1521; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal

principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439. However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles*, 129 S. Ct. at 1419. Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable. *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination. *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum). The petitioner must show clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, __ F.3d __, 2011 WL 609844, at *13(11th Cir. Feb. 23, 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals squarely addressed the "unreasonable application of law" and the "unreasonable determination of facts" tests in February 2011 to clarify the federal habeas court's role in reviewing a state court's decision. *Gill*, *supra*. In *Gill*, the petitioner twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel. *Id.* at *3, 7; *see* U.S. Const. amend. VI. The trial court denied the first motion, finding that Gill's waiver of counsel was not knowing and intelligent. *Id.* at *4; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975) (accused must "knowingly and intelligently" waive representation). It also denied the second motion, instead allowing Gill to act as co-counsel for himself only for determining trial strategy. *Gill*, *supra*, at *8. Gill

was convicted, and the Florida Second District Court of Appeals ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief. *Id.* at *10. Gill then filed a petition in Federal district court, which petition the court denied with prejudice. *Id.* at *11. The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning." *Id.* at 15.[9]

The court acknowledged the well-settled principle that summary affirmances, such as the Second DCA's, are presumed adjudicated on the merits and warrant deference. *Gill, supra,* at *14 (citing *Harrington*, 131 S. Ct. at 784-85 *and Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id.* at *17-18 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at *15 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id* at *17-18 (agreeing with the Fifth Circuit court in *Neal, supra*). In short, the court

---

[9] The court reviewed Gill's claims that the federal habeas court erred in two respects. First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court.'" *Id.* at *14. Second, Gill argued that the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.* at 14. Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel. *Id.* at *14.

stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.* at *18.[10]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id.* at 18. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Id.* at *16; *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system in one sentence:

> Under §2254, a habeas court must determine what arguments or theories supported or. . .could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court."

*Harrington,* 131 S. Ct. at 786. Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion." *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

---

[10] Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive. *Id.* at *14.

## Summary Decisions

A state court's summary rejection of a claim qualifies as an adjudication on the merits under § 2254(d) so as to warrant deference. *Harrington*, 131 S. Ct. at 784; *Blankenship*, 542 F.3d 1253, 1271 (11th Cir. 2008). Section 2254(d) requires only "a rejection of the claim on the merits, not an explanation." *Wright*, 278 F.3d at 1254-55. The presumption of adjudication on the merits stands unless: (1) the court or state-law procedural principles indicate otherwise, or (2) there is a "more likely" reason for the court's decision. *Harrington*, 131 S. Ct. at 784-85.

Summary rulings do not impact a federal habeas court's ability to determine whether the state court's decision resulted from an unreasonable legal or factual conclusion. *Harrington*, 131 S. Ct. at 784. The state court's findings of fact can be inferred from the record, and they are entitled the same deference as explicit findings of fact. *Blankenship*, 542 at 1272; *cf. Cave v. Singletary*, 971 F.2d 1513, 1516 (11th Cir. 1992)(State court findings of fact "cannot be imagined from thin air.").

## Ineffective assistance of counsel.

Some of petitioner's claims for relief in this court are grounded on his belief that he was denied his constitutional right to the effective assistance of counsel. To prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins*, __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). Reasonableness of representation does not mean what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)). In evaluating counsel's performance, reviewing courts must indulge a strong

presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314. Courts must make "every effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also e.g., Chandler* at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance"). The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial. . .worked adequately." *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S. Ct. at 2067; *Marquard v. Sec'y for Dep't of Corrs.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high). In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his

burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788. As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. at 788 (citations omitted); *Knowles*,129 S. Ct. at 1420 (2009) (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d), and *Strickland*, and petitioners only rarely prevail on this ground. *See Rogers*, 13 F.3d at 386.

Fifth Amendment Double Jeopardy Clause

The Fifth Amendment Double Jeopardy Clause, as made applicable to the States by the Fourteenth Amendment, states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

The Supreme Court developed the *Blockburger* test to protect this constitutional guarantee:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932); *see e.g., Texas v. Cobb*, 532 U.S. 162, 121 S. Ct. 1335, (2001) ("offense" carries same meaning in contexts of double jeopardy and right to counsel, so that the right attaches for the charged and uncharged offenses); *United States v. Dixon,* 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 556 (1993) (double jeopardy bars additional punishment when offenses satisfy the "same-elements test") *Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221, (1977) (joy riding and auto theft are same crime under *Blockburger* test). The purpose of the Double Jeopardy Clause is to bar multiple punishments and multiple prosecutions for two offenses when one offense has the same elements as the other. *Dixon*, 509 U.S. at 696-97, 113 S. Ct. at 2856. The "same elements" test is a check on the court to prevent it from exceeding its legislative authorization. *Brown*, 432 U.S. at 165, 97 S. Ct. at 2225.

In general, the Double Jeopardy Clause cannot be avoided by "dividing a crime into a series of temporal or spatial units" to charge a defendant with multiple offenses for the same conduct. *Brown*, 432 U.S. at 169, 97 S. Ct. at 2227. However, the legislature is empowered to "authorize multiple punishments arising out of a single act or transaction." *United States v. Bobb*, 577 F.3d 1366, 1371 (2009); *see Brown*, 432 U.S. at 169 n.8, 97 S. Ct. at 2227 n.8 ("We would have a different case if the Ohio Legislature had provided that joyriding is a separate offense for each day. . .."); *cf. Dixon*, 509 U.S. at 704, 113 S. Ct. At 2860 (expressly overruling the "same conduct" test in *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990)). The Eleventh Circuit creates a presumption that conviction under multiple statutes is prohibited absent clear indication that the state legislature intended

multiple punishments for the same conduct. *Bobb*, 577 F.3d 1371-72.

Within this framework, the court will review petitioner's claims.

## PETITIONER'S GROUNDS FOR RELIEF

**Ground 1.**     **"Whether dual convictions for sexual battery and battery violated double jeopardy protection."**

In this ground for relief, petitioner asserts that his convictions for both battery and sexual battery were unconstitutional because battery is a lesser-included offense of sexual battery. (Doc. 1 pp. 4,4-1). He recounts that the verdict form listed battery as a lesser-included offense, and states that "all the elements of battery are subsumed by the greater offense of battery." (*Id.*). While he concedes that a person may receive dual convictions when the underlying conduct is "separated by time or constitute [sic] different forms of the statutory offense," he maintains the acts used to support the battery and sexual battery convictions were part of "one continuous criminal episode." (*Id.*) (Ex. C, p. 109).

### A.     State Court Decision

Petitioner appealed the court's judgment directly to the First DCA, and the First DCA per curiam affirmed the judgment without opinion. (Ex. C, p. 118, ex. G). Respondent concedes the timeliness of the petition but asserts all available procedural bars. (Doc. 18, p. 7).

### B.  Federal Review of State Court Decision

Petitioner raised his federal claim on direct appeal, and the state court rejected the claim on the merits without discussion. A state court's summary rejection of a claim qualifies as an adjudication on the merits under § 2254(d) so as to warrant deference. *See supra*, <u>Summary Decisions</u>. Federal law is clearly established that state legislatures can expressly allow multiple convictions arising from one criminal transaction. *See Brown*, 432 U.S. at 169 n.8, 97 S. Ct. at 2227 n.8; *Bobb*, 577 F.3d at 1371. Here, the court's decision is consistent with controlling precedent, and the record infers the court reasonably applied the law in affirming the

trial court's judgment. (*See* Ex. C, pp. 1-4, 109). The Florida Legislature manifested a clear intent to allow multiple punishments in petitioner's case:

> Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

Fla. Stat. § 775.021(4)(1). The Supreme Court has repeatedly held that a federal habeas court is bound by a state court's interpretation of state law. *E.g., Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L. Ed. 2d 407 (2005) (Ohio transferred intent doctrine); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) (California rules of evidence); *accord Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005)(Florida rules of evidence). Therefore, this court defers to the state court's interpretation of state law.

Furthermore, the state court based its decision on a reasonable determination of the facts in the record. *See Holland*, 542 U.S. at 652, 124 S. Ct. at 2737-38; *Parker*, 244 F.3d at 835. At trial, the State presented evidence that petitioner committed several acts on the victim during the course of the criminal transaction. Specifically, the victim testified that the defendant rubbed her legs and "kept feeling on [her]" (simple battery) all before performing oral sex and ultimately inserting his penis into her vagina (sexual battery). (Ex. D, pp. 35-37). The appellate court reasonably determined the jury based each conviction on different acts. Therefore, the Florida First DCA's summary rejection of petitioner's claims is entitled to AEDPA deference.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

**Ground 2.** **"Trial counsel was ineffective for failing to establish a defense against probable cause rendering the Defendant's protection pursuant to the 4th, 5th, 6th, and 14th Amendments to the United States Constitution abrogated.**

Petitioner voluntarily abandons this claim for relief. (Doc. 28 ¶ 5; *see* doc. 1, p. 4).

**Ground 3.** **"Trial counsel rendered ineffective assistance when he failed to file a motion to dismiss after the State failed to file timely information charging the Petitioner with a crime."**

In this ground for relief, petitioner asserts that fifty-three days elapsed between his arrest on April 13, 2004, and State's filing of the charging information on June 3, 2004.[11] (Doc. 1, p. 5-1). He contends if trial counsel had filed a motion to dismiss for lack of jurisdiction, the State "would have been required to prove that it had properly acquired jurisdiction." (*Id.*) Although his petition does not elaborate, the original motion for post conviction relief cited Florida Rule of Criminal Procedure 3.134, which states:

> The state shall file formal charges on defendants in custody by information, or indictment, or in the case of alleged misdemeanors by whatever documents constitute a formal charge, within 30 days from the date on which defendants are arrested or from the date of the service of capiases upon them. If the defendants remain uncharged, the court on the 30th day and with notice to the state shall:
> (1) Order that the defendants automatically be released on their own recognizance on the 33rd day unless the state files formal charges by that date; or
> (2) If good cause is shown by the state, order that the defendants automatically be released on their own recognizance on the 40th day unless the state files formal charges by that date.

Fla. R. Crim. P. 3.134. Based on petitioner's calculation, he concludes that if trial counsel had moved for dismissal of the case based on failure to bring formal

---

[11] The trial court noted and the undersigned agrees that the record shows petitioner was actually arrested on May 17, 2004. (Ex. K, att. 3). Eighteen days elapsed between arrest and information.

charges, petitioner would not have been tried or convicted. (Doc. 1, p. 5-1). However, petitioner's final prediction in arguing prejudice is that "the State would have been required to prove that it had properly acquired jurisdiction," implying it could not have offered such proof. (*Id.*)

### A. State Court Decision

Petitioner raised this claim in his first motion for post conviction relief. (Ex. K, pp. 25-37). The Rule 3.850 court denied relief based on its interpretation of Fla. Crim. R. P. 3.134. (Ex. K, p. 75). The court determined that even if trial counsel had made the motion, the court would not have granted it. The court stated: "Rule 3.134 is not a jurisdictional rule. Rather, its purpose is to prevent defendants from being held indefinitely in custody without the filing of formal charges." (*Id.*) Under this interpretation, the court denied petitioner's claim because he did not show that trial counsel's failure to make the motion prejudiced him. (*Id.*)

### B. Federal Review of State Court Decision

While the Rule 3.850 court did not cite to Supreme Court precedent, it clearly identified and applied the prevailing test set forth in *Strickland* in denying petitioner relief. The court held the petitioner's claim for relief based on ineffective assistance of counsel failed because petitioner did not show how the proceedings would have differed if trial counsel made the proffered objections. (Ex. K, p. 74). *See* 466 U.S. at 677-678, 104 S. Ct. at 2064 (petitioner must shows counsel's actions were objectively unreasonable and the proceeding's outcome would have differed if counsel acted differently).

Before this court could determine if the state court unreasonably applied clearly established federal law, this court would have to conclude that the state court misinterpreted state law. As stated above, this court is bound by a state court's determination of state law. *See supra* Ground 1, B. The Eleventh Circuit addressed similar issues in *Herring*, *supra*. There, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction

of non-statutory aggravating evidence at the penalty phase of his trial. 397 F.3d at 1354-55. The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient. *Id.* The Eleventh Circuit held: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . .and federal habeas courts should not second-guess them on such matters." *Id.* (internal quotations omitted); *see also Callahan*, 427 F.3d at 932 (11ᵗʰ Cir. 2005) ("[Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection").

Here, as in *Herring*, the state courts have answered the question of what would have happened had petitioner's counsel moved to dismiss the case: the court would not have granted the motion because it is not a jurisdictional rule. (Ex. K, p. 75). Therefore, counsel cannot be faulted for having failed to make it, and petitioner cannot show prejudice.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

**Ground 4:** <u>"Trial counsel rendered ineffective assistance for failing to request a Richardson inquiry or file a motion to suppress and [sic] unlawful search and seizure pursuant to the Fourth Amendment."</u>

In this ground for relief, petitioner asserts that his extradition to Florida was unlawful because it did not comply with the Uniform Interstate Extradition Act, Florida Statute § 941.13, or Florida Constitution Article I, Section 12 (analogous to United States Constitution Amendment IV). Furthermore, the police did not have probable cause to arrest him. (Ex. K, p. 42). Petitioner goes on to argue that trial counsel should have requested a *Richardson* hearing alleging the State withheld the

record of proceedings in North Carolina during discovery and trial.[12] (*Id.* at p. 40).
If the court had conducted a hearing, the State's "case-in-chief would have been
negated and the defendant's release from custody justified." (*Id.* at 42). Petitioner
lists the following facts in support of his argument:

1.   Petitioner requested and received his North Carolina counsel's case file,
which did not include "an information, application for warrant, warrant, sworn oath
on complaint, affidavits or any other certified document from Florida." (*Id.* at 40).

2.   The officer who applied for the warrant "was not at the crime scene during
the alleged event," but the warrant stated the officer "made an oath." (*Id.* at 41).

3.   The warrant did not have attached a witness affidavit or sworn victim
statement, and the officer's affidavit did not state she observed "the events alleged
against defendant." (*Id.*).

4.   The officer withheld information from the judge issuing the warrant, in
particular:  that there were no signs of forced entry; that the buccal swab and DNA
sample police obtained from petitioner showed only that the victim had male sperm
in her vagina; the buccal swab required further laboratory testing.  (*Id.*).

The thrust of petitioner's argument is that had trial counsel requested a
*Richardson* hearing, the evidence obtained from such a hearing would have shown
that the officer who applied for the warrant had "no evidence against the defendant
as having been at the scene except for the allegation by the alleged victim in which
no sworn statement was given." (*Id.*).  Therefore, the warrant would have been

---

[12]  *See Richardson v.* State, 246 So.2d 771, 775 (Fla. 1971). Florida courts have held a *Richardson* hearing
should be conducted when the state withholds discovery:

> If, during the course of the proceedings, it is brought to the attention of the trial court that the
> state has failed to comply with rule 3.220, the court must conduct a hearing to determine
> whether the state's violation was inadvertent or willful, whether the violation was trivial or
> substantial, and, most importantly, what effect, if any, the violation had upon the ability of the
> defendant to prepare adequately for trial.

*Lowery v. State*, 610 So.2d 6 57, 659 (Fla. Ct. App. 1992).  Although petitioner claims the North Carolina
counsel's file was missing the warrant, petitioner admits that the State provided a Florida warrant to defense
counsel during discovery.  (Doc. 18, ex. K, p. 40).

invalid, meaning North Carolina officers should not have arrested him, and he would not have been tried or convicted. (*Id.* at 43).

Furthermore, petitioner extends his claim to assert that trial counsel should have moved to suppress the "fruits" of the arrest, mainly the DNA test identifying petitioner as a match with the semen sample from the victim. (*Id.* at 43). Petitioner also includes his trial testimony as "fruit" of an illegal arrest because he was not advised of his right to remain silent. (*Id.*). Had counsel requested the hearing and moved for suppression of evidence, petitioner states the "outcome of [his] proceedings would have been vastly different." (*Id.* at 44).

A. State Court Decision

Petitioner raised this claim as ground three in his first motion for post conviction relief. (Ex. K, pp. 39-44). First, the Rule 3.850 court reincorporated its denial of relief to the extent it was based on the alleged illegal extradition about which petitioner complained in ground two. (*Id.* at 75). Second, the court stated that petitioner's claim that his counsel should have moved for a *Richardson* hearing was without merit. (*Id.* at 75). The court used relevant Florida case law to explain when a court must conduct a *Richardson* hearing and about what the court must inquire. (*Id.* at 75-76). Importantly, the court identified that the hearing relates to the prosecution's willful or inadvertent failure to turn over discovery. *Id.* The court connected the standard set forth in *Richardson* to the corresponding mandate of Florida Rule of Criminal Procedure 3.220. This rule requires the State to produce within fifteen days a written discovery exhibit that includes:

> (A) a list of the names and addresses of all persons known to the prosecutor to have information that may be relevant to any offense charged or any defense thereto, or to any similar fact evidence to be presented at trial under section 90.404(2), Florida Statutes. The names and addresses of persons listed shall be clearly designated in the following categories:
> (i) Category A. These witnesses shall include (1) eye witnesses, (2) alibi witnesses and rebuttal to alibi witnesses, (3) witnesses who were

present when a recorded or unrecorded statement was taken from or made by a defendant or codefendant, which shall be separately identified within this category, (4) investigating officers, (5) witnesses known by the prosecutor to have any material information that tends to negate the guilt of the defendant as to any offense charged, (6) child hearsay witnesses, and (7) expert witnesses who have not provided a written report and a curriculum vitae or who are going to testify to test results or give opinions that will have to meet the test set forth in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

(ii) Category B. All witnesses not listed in either Category A or Category C.

(iii) Category C. All witnesses who performed only ministerial functions or whom the prosecutor does not intend to call at trial and whose involvement with and knowledge of the case is fully set out in a police report or other statement furnished to the defense;

(B) the statement of any person whose name is furnished in compliance with the preceding subdivision. The term "statement" as used herein includes a written statement made by the person and signed or otherwise adopted or approved by the person and also includes any statement of any kind or manner made by the person and written or recorded or summarized in any writing or recording. The term "statement" is specifically intended to include all police and investigative reports of any kind prepared for or in connection with the case, but shall not include the notes from which those reports are compiled;

(C) any written or recorded statements and the substance of any oral statements made by the defendant, including a copy of any statements contained in police reports or report summaries, together with the name and address of each witness to the statements;

(D) any written or recorded statements and the substance of any oral statements made by a codefendant if the trial is to be a joint one;

(E) those portions of recorded grand jury minutes that contain testimony of the defendant;

(F) any tangible papers or objects that were obtained from or belonged to the defendant;

(G) whether the state has any material or information that has been provided by a confidential informant;

(H) whether there has been any electronic surveillance, including wiretapping, of the premises of the defendant or of conversations to which the defendant was a party and any documents relating thereto;

(I) whether there has been any search or seizure and any documents

relating thereto;

**(J) reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons; and**

**(K) any tangible papers or objects that the prosecuting attorney intends to use in the hearing or trial and that were not obtained from or that did not belong to the defendant.**

**(2) If the court determines, in camera, that any police or investigative report contains irrelevant, sensitive information or information interrelated with other crimes or criminal activities and the disclosure of the contents of the police report may seriously impair law enforcement or jeopardize the investigation of those other crimes or activities, the court may prohibit or partially restrict the disclosure.**

**(3) The court may prohibit the state from introducing into evidence any of the foregoing material not disclosed, so as to secure and maintain fairness in the just determination of the cause.**

**(4) As soon as practicable after the filing of the charging document the prosecutor shall disclose to the defendant any material information within the state's possession or control that tends to negate the guilt of the defendant as to any offense charged, regardless of whether the defendant has incurred reciprocal discovery obligations.**

Fla. R. Crim. P. 3.220; *see also Richardson*, 246 So.2d at 775.

Significantly, in reviewing the list in Rule 3.220, the court found that petitioner did not show the State willfully or inadvertently withheld any evidence regarding the proceedings in North Carolina.  (*Id.* at 76).  It noted that the North Carolina record of proceedings would have been available to defense counsel through a public records request.  (*Id.*)  Further, the court found that petitioner failed to state what evidence should have been suppressed, or any legal grounds for suppressing evidence, aside from the extradition procedures the court deemed irrelevant. (*Id.*)  Petitioner did not assert that the buccal swabs or resulting evidence should have been suppressed. (*Id.*, at 76 n.5)  He also testified at trial that he had sexual intercourse with the victim. (*Id.*)  The court noted that to the extent petitioner asserted that the arresting officer's failure to give petitioner his *Miranda* rights supports suppression of his trial testimony, the assertion is frivolous and without merit because he was not compelled to testify and did so on his *own* behalf.  (*Id.*)  In sum, the court found that

petitioner "failed to demonstrate that he was in any way prejudiced in his trial preparation" by the State's alleged withholding discovery, and he "failed to demonstrate what, if any, alternative means of defense he would have undertaken." (*Id.* at 76).

B. Federal Review of State Court Decision

This court recognizes the Rule 3.850 court viewed petitioner's claims similarly; it did not need to tediously restate analysis in one claim that also applied to subsequent claims. The language of the opinion clearly shows the court applied the *Strickland* test in denying petitioner relief. *See* 466 U.S. at 677-678, 104 S. Ct. at 2064 (petitioner must shows counsel's actions were objectively unreasonable and the proceeding's outcome would have differed if counsel acted differently). The court held the instant claim for relief based on ineffective assistance of counsel failed because petitioner did not show how he was prejudiced or how his defense would have changed if trial counsel had requested a *Richardson* hearing or moved to suppress evidence. (Ex. K, p. 76). Parallel to claim three, in citing Rule 3.220 and concluding petitioner's claim was meritless based on the discovery rule, the court interpreted Florida law. As stated, a federal habeas court defers to the state court's interpretation of state law. *See supra*, Ground 1B. & 3B.; *Herring*, 397 F.3d at 1354-55 (11th Cir. 2005).

The Rule 3.850 court based its decision on a reasonable interpretation of the facts in the record. It found nothing in the record to suggest the State withheld discovery so as to warrant a *Richardson* hearing. (*Id.* at 76). Moreover, it applied the rule in *Richardson* in holding that even if the State withheld discovery, any withholding was trivial and had no bearing on the defendant's ability to prepare for trial. (*See Id.*, pp. 75-76) (stating what the court must determine during a discovery abuse hearing). As for petitioner's sub-claim that trial counsel should have moved to suppress evidence, the court found that the petitioner did not state a legal basis for suppression. (*Id.*) He did not contest the admissibility of the buccal swab

results, and he voluntarily testified at his trial. (*Id.*, p. 76 n.5). The court attached portions of the trial transcript to the opinion, in which petitioner admitted having sexual intercourse with the victim, and the victim identified petitioner as the perpetrator. (*Id.*, pp. 92-118). The court supported its decision with relevant portions of the record, and its decision was not objectively unreasonable. *See e.g., Bell*, 535 U.S. at 697 n.4, 122 S. Ct. at 1851 n.4.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra.* Petitioner is not entitled to federal habeas relief, and the writ should not issue.

**Grounds 5-10:** **Trial counsel was ineffective in each ground for:**
**(5) "failing to investigate or preserve the issue of: fundamental error…in the issuance of an arrest warrant…without the State properly establishing probable cause"; the trial court's lack of subject matter jurisdiction or authority to deny bail.**
**(6) "failing to preserve issues that the information was fatally defect" and "divested" the trial court of jurisdiction; "pleading Defendant not guilty" to the information; failing to preserve the issue that the assistant State attorney commited perjury and fraud by submitting the information.**
**(7) "failing to set forth during his opening statement and closing argument, the Defendant's two viable theories of defense to counts one and two."**
**(8) "failing to preserve the issue of prosecutorial misconduct during State's closing argument."**
**(9) "failing to preserve the issue of the trial court's post trial admission of evidence[.]" Trial counsel and the State prosecutor both commited misconduct when trial cousel stipulated to "such evidence."**
**(10) "failing to preserve the issue that Defendant's sentence, conviction and information all violated Defendant's Fifth Amendment Double Jeopardy rights, and was fundamental error."**

Petitioner first asserted these claims in his "Motion for Rehearing Notice to Palintiff [sic] of Request for Evidentiary Hearing" filed January 22, 2007 (ex. J., pp. 0-15), after the trial court denied his motion for post conviction relief ("first 3.850 motion") on January, 2, 2007 (ex. K, p. 72). In this motion, petitioner moved for rehearing "on the grounds that there are other issues that this court needs to

address concerning Defendant's post-conviction proceeding." (Ex. J, p. 0). Purportedly, the "other issues" are the six grounds listed, on which petitioner requested an evidentiary hearing. (*Id.*)

Petitioner then filed his "Motion to Vacate, Set Aside or Correct Sentence Notice to Plaintiff of Request for Evidentiary Hearing" ("second 3.850 motion") on April 27, 2007. (Ex. O, p. 1). In this motion, petitioner stated the same six grounds for relief and supporting facts as in the motion for rehearing (ex. J, p. 0), and the instant petition for writ of habeas corpus.[13] (Ex. O, pp. 1-25; *see* doc. 1).

### A. State Court Decision

The court denied the motion for rehearing for failing to present any new facts, law, or issues relating to the first 3.850 motion. (Ex. J, p. 16). The court also recognized petitioner's attempt to raise additional claims for postconviction relief and stated that a motion for rehearing shall not raise new issues. (*Id.*) (citing Fla. R. App. P. 9.330(a)).

The court declined to address the second 3.850 motion on the merits because it was successive. (Ex. O, p. 28). It acknowledged the first 3.850 motion and order, and stated that "Defendant could have, and should have, alleged the instant claims in his original motion for postconviction relief." (*Id.*) Accordingly, the court dismissed with prejudice the second 3.850 motion. (*Id.* at 29).

### B. Federal Review of State Court Decision

Petitioner's claims are procedurally defaulted from obtaining federal review because they were raised in the Rule 3.850 court and that court rejected the claims on independent and adequate state grounds. *See Coleman*, 501 U.S. at 729, 111. S. Ct. at 2254; *Judd*, 250 F.3d at 1313 (11th Cir. 2001). This rule applies even when the state law ground is procedural, as it is here. (Ex. O, p. 28); *see Coleman*, 501 U.S. at 729, 111. Florida courts routinely apply the successive

---

[13] The grounds are numbered five through ten, indicating continuing grounds from his first 3.850 motion. (ex. J., pp. 0-14).

motion procedural bar to many types of alleged errors, regardless of their nature. Fla. R. Crim. P. 3.850(f);[14] *Ramirez v. State*, 822 So.2d 593 (Fla. 2nd DCA 2002); *Ragan v. State*, 643 So.2d 1175 (Fla. 3rd DCA 1994). Like the federal rule barring successive habeas petitions, the state rule prevents duplicitous and unnecessary motions that "inject undue delay into the collateral review process." *Slack v. McDaniel*, 529 U.S. 473, 476, 120 S. Ct. 1595, 1600, 146 L. Ed. 2d 542 (2000). In classifying the second 3.850 motion as successive, the court clearly and expressly relied on the state's procedural default doctrine regarding claims for post conviction relief. (Ex. O, pp. 28-29). Therefore, the default is *per se* adequate state grounds independent of the federal question. *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557.

The petitioner has not shown "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice, so as to excuse the default. *See Kelley*, 377 F.3d at 1345; *supra*, Procedural Default and Exhaustion. Upon inspection, the six "new" grounds for relief petitioner asserted in his second 3.850 motion are restatements of petitioner's original grounds, which the court denied. (*Compare* Ex. O, p. 1-25; ex. J, pp. 0-20). Petitioner presented no new evidence showing prejudice or factual innocence. Therefore, this court should not review his claims on the merits.

Petitioner is not entitled to federal habeas relief, and the writ should not issue.

## CONCLUSION

Six of petitioner's grounds for relief are procedurally defaulted. Petitioner has

---

[14] The court relied on Rule 3.850 regarding successive motions. Fla. R. Crim. P. 3.850(f). The rule states :

> A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.

*Id.*

made none of the requisite showings to excuse his default. Those claims that were properly exhausted do not warrant federal habeas relief.

Accordingly, it is respectfully RECOMMENDED:

    1.  That the petition for writ of habeas corpus (doc. 1) challenging the conviction and sentence in *State of Florida v. Carl Lee Blackmon*, in the Circuit Court of Excambia, Florida, case no. 2004 CF 002181 A, be DENIED and the clerk be directed to close the file.

    2.  That a certificate of appealability be DENIED.

    At Pensacola, Florida this 20th day of April, 2011.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**